May it please the Court, my name is Alexandra Kerlin. I represent the appellants in this matter E. W. and her father B. W. Before I begin my argument I would like to say thank you for your time today. Thank you for allowing us to be here. I would like to also reserve three minutes for rebuttal. Eighty-five years ago in Hormel v. Halvering, Justice Black taught us that the rules of practice and procedure are devised to promote the ends of justice, not to defeat them. This is especially true in the context of education cases where students hold a property interest in their public education. Unfortunately, the trial court here focused on procedural defects rather than substantive claims that were at the heart of the case. The trial court erred in four specific ways. First, by dismissing the Title IX claim when it was fully briefed by the parties. Secondly, by subjecting plaintiffs to a higher burden of proof in contravention of the Supreme Court's AJT case. Third, by shifting the summary judgment burden to plaintiffs rather than to defendants on the Section 504 claim. And lastly, by focusing on the wrong incident as the catalyst for the retaliation claim. I'd like to start with the Title IX claim. The trial court's dismissal of the Title IX claim is the most obvious example of form over substance in this matter. The trial court dismissed the claim outright even though the defendant failed to argue waiver in its opening brief and instead fully briefed the issue on the merits. The defendant did mention in the footnote that it was missing from the statement of claims, is that correct? They mentioned it in a footnote and then committed to move forward and brief the issue on its claims and said, we don't have to but we're going to because we can. And when they did so, they openly challenged the defendants to defend that claim and they never said that they couldn't defend the claim. In fact, they kicked the door wide open for the analysis of the Title IX claim. But I suppose they would argue that, and they have argued, that it was kind of belts and suspenders, right? That they raised the issue and, but just in the event that the court was going to rule on the merits, that they provided their view as to the merits. It wasn't just that they provided their view, respectfully, Your Honor. It's that they actually defended the claim. The entire purpose of the statement of claims is to make sure that you know what issues you're briefing for summary judgment so that you know what you're doing in discovery so that you know what the court is looking at and what the court needs to rule on. To the extent that the defendants fully briefed the claim, fully argued the claim, shows that even though the state, that the statement of claims, it was in the complaint, the facts for the Title IX claim were also in the statement of claims, shows that they weren't surprised by it, that they didn't have, they didn't, they had notice of it and they wanted to engage on the Title IX claim. I'm following your argument there. I also note there's a difference between what a court should do or what a party says a court should do and what a court must do. So I'm wondering if you have a case that we can reach for that says it's an abuse of discretion for the court not to allow a party to argue a claim that in this particular local setup is missing from a statement of claims. I don't think that case exists right now. The cases that we have wherein the courts have said when when it's not briefed or when it's not stated in the statement of claims, we disregard it. In all of those cases, none of the parties engaged on the merits. So here we're presented with a novel situation wherein a party says I don't have to brief it and then goes ahead and does so, inviting again the defendant to fully unbrief it. And so we don't have the same issues and facts that we typically have had when a statement of claims issues come up. So are you advocating for a rule then that if a party briefs an issue, the district court can no longer enforce its local rules? I don't think I'm ever going to say that a district court can't enforce its rule. But what I am going to say is that rules are there for a purpose. And so when the spirit of the rule, when justice requires that the spirit of the rule be enforced, it should absolutely be enforced. But when the conduct of the parties requires that the rule, requires that we look at the rule a little bit differently with regard to the facts of the case, I think we always have to do that. I think we always have to do that and that's exactly what happened in this case with regard to the Title IX issue. Ms. Kerlin, can I address something on the merits, please? Please. So the school gave two grounds for denying the request for transfer, right? The absences, and I understand the arguments that you make about that, but it also provided grounds that if a student has been suspended for 10 or more school days, right? And I don't see the argument, or at least I didn't see perhaps there, your argument with regard to that particular grounds. Thank you, Your Honor. I appreciate the opportunity to address that. I think this falls squarely within the AJT and OSEO schools, deliberate indifference standard. In 2025, the Supreme Court looked at AJT and OSEO schools and it found that in disability discrimination cases in schools, that we're going to follow the same deliberate indifference standard that we follow everywhere else. With regard to the specific suspensions there, let me back up a little bit. The deliberate indifference standard, as this Court well knows, is that we're looking at whether the defendant disregards a strong likelihood that a challenged action is going to violate a protected right. In fact, here in this particular case, what the defendant, what the school district had to have done is to say, can we deny EW enrollment based on her suspensions, even when those suspensions are related to her conduct? How would they know that the suspensions are related? I mean, you mean related to her disability, right? Related to her disability, excuse me. How would they know that? By conducting a manifestation determination analysis. In fact, Mr. and Mrs. W. asked multiple times for a manifestation determination analysis to be conducted and the school told them on multiple occasions, we haven't hit 10 days, we haven't hit 10 days, we're not going to engage in the analysis. As soon as the 10th one hit, they then denied her enrollment, which shows that they never said they couldn't engage in the analysis, they never said they didn't know how to engage in the analysis, nor did they ever say that Section 504 doesn't require the analysis. What they said is, we're not going to engage because we haven't hit day 10 yet. And then as soon as they hit day 10, they denied her enrollment. That is deliberate indifference under AJT. The question that the district court asked was whether or not Section 504 requires the analysis. I would submit to you, I'm at my three minutes but I've only gone through two issues, does the court have other questions or may I reserve my time for rebuttal? You can finish answering Judge Lee's question and reserve the remainder of time if you wish. Thank you, Your Honor. I would submit to this court that failure to go through that analysis before denying her enrollment was deliberate indifference under AJT. I think most poignant on that point is defendant's own admission that that analysis requires expert testimony. To the extent that that analysis requires expert testimony, it in and of itself precludes summary judgment and requires that this court reverse the decision of the trial court. Thank you, Your Honors. Thank you. We welcome to the podium Mr. Hughes. Good morning. May it please the court, my name is Sam Hughes and I represent Mount Vernon Community School Corporation. For three reasons that are present at the appellate level but that were also present at the district court level, the district court's opinion should be affirmed in this case on all counts. First, plaintiffs failed to raise critical legal arguments at the district court level in the response to their motion for summary judgment. First off being the issue that was just raised with the Title IX claim. There was no in the footnote that we, that defendant put into the motion for summary judgment, which is all that other cases have done. I think the Scheller case, it was in a footnote as well. The difference being that we then went and addressed the Title IX issue. We raised that in a footnote, defendants did. Plaintiffs did not respond or acknowledge the procedural defect in their response brief. It was only until the reply came from the defendant that now plaintiffs will say, they came and they attacked us on that procedural issue at that point in time. I would argue to you that if that was the case, which it was not, it was in a footnote, clearly put in a footnote in the motion for summary judgment, which the Southern District's prior opinions and the cases cited by the district court clearly allow. If that was the case, that plaintiff was surprised by that, they, certify is an option. They had the ability to file certify. They, they, plaintiffs then failed to do that as well. And that was the motion to strike issue that came when they belatedly filed a motion to strike. Defendants, I think, motion to strike. And the court ultimately ruled this is a surreply and it's not named that, but it is a surreply and it's late, so they struck it. But they didn't argue the issue of the statement of claim deficiency in that response either. So it's clearly allowed that courts are entitled to have case management orders and rules for the efficiency of their cases. And in this case, a footnote is sufficient and the school's decision to move forward with briefing the issue should not preclude the court's ability to enforce the rule. Here, because of a, I think a few reasons, one being, as you'll see, the retaliation claim, the district court highlights there was some ambiguity in what the retaliation claim was in line with Rule 504. Was this ADA? Was it Title IX? And so, as a, out of an abundance of caution, we, yes, we went ahead and briefed that issue. But that being said, the footnote stands for what it stands for. We were also presented with a belated statement of claims four days before our deadline. So we included the Title IX issue in our motion for summary judgment. Mr. Hughes, can I ask you about the request for a manifestation meeting? Yes. The, as I understand the plaintiff's position is that they asked for it and the school replied that you needed to have more than 10 days of suspension. I'm not aware of, I don't believe that is the record in the case. What was the reason that, what was the school's response to the request for the meeting? I believe there was a dispute, the record says there was a dispute between the parents saying there's 12 or 13 actual suspension days if you count this one. And the school said, no, we're at 10 and we don't have to give a manifestation. And they told the parents, well, if you disagree, go back and look and tell us, you know, we can compare notes essentially, compare absences, compare suspensions. And I don't think that was ever done in the time frame between May and June when the re-enrollment was denied. So I guess your position is that, I mean, the plaintiff's position is that this was an attempt to engage on reasonable accommodation and the school just, like, stonewalled them. I do not believe that is the case. As the record shows, Your Honor, the school and parents were emailing and talking about reasonable accommodations almost every other month. Oh, no, no, I meant with regard to the manifestation meeting request. You're saying the school went back to them and said, you know, we don't think it's school policy that we need more than 10 days of suspension. We don't think you're there yet. If you think you are, get back to us. I don't think it wasn't that it's school policy. I believe there was an issue of, hey, we're over 10 days, said by the parents. The school said, no, you're at 10 days. But also they didn't dig into the IEP v. 504 student analysis. This is a student that's a 504 student. I'm just trying to understand why the school didn't say, yes, come on in. Well, I think they weren't required to, and creating that manifestation requirement every time a 504 student asked for that would be an undue burden on the school. But also they're dealing with IEP students that have specific requirements. So a 504 student-like plaintiff, to do a manifestation hearing, one of the elements that you have to address is the IEP, which doesn't exist for a plaintiff, for this plaintiff. All that aside, you are still at the point where the school is telling the parents or the school is telling the court, both here and district court, they have no evidence that her conduct is related to her disability. But yet the school did not provide a forum where the parents could present that or explore that evidence with the school. So it's both holding against the parents a way to develop the very evidence the school says is lacking. But, Your Honor, I think the burden for dealing with what we have to show, we have shown that the adverse action, not being re-enrolled, was related to 10 suspensions and a plethora of absences. It's both. We deal with the absences and then the suspensions is kind of with an IEP leaning, but it's both. And they come with a nondiscriminatory reasons. They present those to them. And then the plaintiff has the burden to show pretext. And they have not, in this case, at the district court level, I still have not heard any pretext that is supported by admissible evidence or the record at all. Would that have been developed at such a meeting? It could have been developed in depositions. It could have been developed at the meeting. I don't think it was. Pretext would need to be, yes, something at a meeting may be said or they hear a comment outside of the meeting. They get an e-mail communication. There's nothing like that here. And they haven't developed any type of pretext through depositions of school representatives or anybody like that. They're simply the parent's affidavits just making legal conclusions or conclusory statements. Is there anything in the student record from a medical health professional that would link the behaviors that led to suspensions with the student's disabilities? The anxiety and depression are the disabilities that get the 504 to the hot pass and to try and calm the student down. But you don't get to say, well, I have a disability, and therefore I am able to do these. No, no, I understand. That's why I'm wondering whether the file, the 504 file, has any sort of physician report or therapist report or other medical professional that suggested that the anxiety and those conditions could lead to the type of behavior that led to the suspensions. I'm not aware of that direct causal link that would say because of this anxiety. And we have the parents saying it. But the question is, is there anything else that they provided? I have nothing to show for that. The anxiety would have to lead to her behaviors with other students and teachers that gets her suspended that then causes her to have these days and become unenrolled. And there's no counselor or any medical professional that I've seen that says that. Let me ask you a different question. Because at summary and judgment, courts are supposed to draw inferences in favor of the non-moving party. So why wasn't it an error for the magistrate judge to begin the analysis, the suspicious timing analysis, at the moment of the parent's final protected activity as opposed to at their first protected activity? Because there's a very different one. Where you start favors one party versus the other. I understand that argument and that position. But I would think the proximity in time, even with a May, even if we go from that last email where we request that manifestation, we still have May to June over, I think, three weeks. And the reason for the unenrollment, and I realize my time's up. You can finish your answer. The reason for the unenrollment being the attendance issues was previously discussed in December, in a December letter by the school to the student's parents saying, hey, you're already at 10 absences. This is a problem. To say that all of a sudden that May email triggered this adverse action when there's clear non-discriminatory proof that a letter was sent in December about the attendance records, it's not related. It doesn't prove that that May email is the triggering event. In fact, the final unenrollment letter, when you look at it in the context of that past 12 months and you see that December letter, they have been talking to these parents about the attendance problems and issues for months and months. And so it's not a new thing. It wasn't triggered just by that final May email. If there are no other questions from the court, I'll conclude. Okay. Thank you, Mr. Hughes. Thank you, Your Honor. Ms. Carlin, let me see how much time you have left. Okay. Thank you, Your Honor. Thank you, Your Honors, again. I appreciate your time. The analysis that Mr. Hughes just went through is exactly what we're talking about. There was plenty of evidence in the record that EW's conduct was caused by her disability. Is there something other than the parents saying that it was? Absolutely. There's her own counselor, Erin Brown, talking about why she's there, how many times she comes in. There was an incident where one of her counselors says, stop throwing a fit and just go back to class. That was one of the issues that EW brought up as being deliberate indifference to her disability. The absences, the failure to engage on the absences, he's right, that there were letters coming out saying, hey, your absences, your absences, your absences. As soon as these letters started coming out, the parents proactively said, these absences are happening because of what's happening at school here. This is her anxiety, and we need an accommodation for it. They kept ignoring it. They kept saying, can you at least look? Look and see whether these absences are related to her disability because you cannot keep punishing a student for absences when those absences are related to her disability. The school refused to engage. That is deliberate indifference under AJT. That's exactly what happened in that case, a student who had severe epilepsy who couldn't attend school in the mornings, and the school refused to accommodate that disability. That is this case. With regard to the temporal proximity, I've got 15 seconds left. With regard to the temporal proximity, that's another issue. If I could finish, I think I'm going to go over the eight seconds. You can finish your point. Thank you, Your Honor. With regard to the temporal proximity, temporal proximity is included in a mosaic of things that the district court is supposed to look at to determine whether or not there's retaliation. The district court watered it down to one question, which was proximity in error, but even with the proximity question looked at it from 2021 rather than from what happened in 23, and the pattern of requests for the manifestation determination meeting. Thank you so much for your time, Your Honors. I appreciate it. Okay, thank you to the parties. We'll take the case under advisement.